UNITED STATES DISTRICT COURT
Western District of Texas
Austin Division

| | |
|---|---|
| THIN BLUE LINE BENEFITS § <br> ASSOCIATION HOLDINGS, LLC, § <br> ANNA REED AND ROBERT § <br> ANDERSON, § <br>     Plaintiffs § <br> § <br> v. § <br> § <br> § <br> MATTHEW CLAY, § <br>     Defendant. | Civil Action No.:  1 cv 24-1510 |

**PLAINTIFFS' ORIGINAL COMPLAINT, REQUEST FOR DECLARATORY JUDGMENT AND REQUEST FOR PERMANENT INJUNCTION**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Thin Blue Line Benefits Association Holdings, LLC, Anna Reed, and Robert Anderson (collectively referred to as "Plaintiffs") sue Matthew Clay ("Defendant") for breach of contract, business disparagement, negligent misrepresentation, and tortious interference. Plaintiffs further seek a declaratory judgment and permanent injunction.

**NATURE OF THE ACTION**

1. This action is for money damages, declaratory relief and permanent injunction arising from agreements entered into by members of Thin Blue Line Benefits Association Holdings, LLC ("TBL"). TBL provides group health insurance benefit plans solely to first responders.

2. Defendant withdrew as a member of TBL in August 2024, leaving the remaining TBL members as Anna Reed and Robert Anderson. As part of the withdrawal, the parties entered into a Redemption and Withdrawal Agreement ("Redemption Agreement") that included an Independent Contractor Agreement ("ICA"). The Redemption Agreement provided Defendant the

opportunity to transition the current TBL sponsored PPO Signature Plan to his own association as a plan sponsor and retain 100% of the commissions.

3. The claims asserted in this lawsuit arise from Defendant's decision to not transition the Signature Plan, but rather to create his own cost share plan, offering that plan and offer that as a "replacement" plan in violation of the Redemption and Withdrawal Agreement and federal law. Defendant made and continues to make false statements and communications to others concerning TBL and the Signature Plan that is causing harm to TBL and Signature Plan participants.

## PARTIES

4. Plaintiff Thin Blue Line Benefits Association Holdings, LLC ("TBL") is a Texas limited liability company with headquarters in Lakeway, Travis County, Texas.

5. Plaintiff Anna Reed is the sole manager and member of Thin Blue Line Benefits Association Holdings, LLC and a Texas resident residing in Texas.

6. Plaintiff Robert Anderson is a member of Thin Blue Line Benefits Association Holdings, LLC and a Washington resident residing in the State of Washington.

7. Defendant Matthew Clay is a former member of Thin Blue Line Benefits Association Holdings, LLC and resides in Orange County, California and may be served at his residence of 20 Wildland, Irvine CA 92603-0224, or wherever else he may be found.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000.00 excluding interest and costs. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

9. This Court has personal jurisdiction over Defendant pursuant to §17.042(1) of the Texas Civil Practice and Remedies Code because Defendant contracted by mail or otherwise, with Thin Blue Line Benefits Association Holdings, LLC, a Texas resident, and the parties were to perform the contract in whole or in part in this state. This Court has personal jurisdiction over Defendant pursuant to §17.042(2) because the defendant committed the torts of business disparagement, negligent misrepresentation, and tortious interference in whole or in part in this state.

10. Personal jurisdiction over the Defendant satisfies Due Process because Defendant maintained minimum contacts with Texas. Defendant purposely traveled to Texas 2-3 times a year for business purposes related to these contracts. Defendant maintained an office which he used when working in Texas, within TBL's headquarters, in Lakeway, Travis County, Texas. Monetary payments made to Defendant that were earned under the contracts all originated in Texas. Defendant purposely availed himself of the privilege of being a member and officer of a Texas entity for payment. Defendant also purposely availed himself of the monetary benefits set forth in the Redemption and Independent Contractor agreements, which included performance of activities to be conducted inside and outside of Texas. Furthermore, in June 2024, Defendant obtained a General Lines Agent License from the Texas Department of Insurance, showing an intent to continue to conduct business in Texas. The causes of action asserted in this lawsuit arise out of or relate to Defendant's prior membership and officer status in a Texas company, breach of the Redemption Agreement signed by Defendant with TBL, and tortious conducted related thereto an. These contacts are sufficient minimum contacts with Texas that do not offend traditional notions of fair play and substantial justice.

## FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### THE MEETING

11. Anna Reed has been working in the insurance industry since 1995. Based on her experiences and reputation, Ms. Reed was sought out by law enforcement related organizations to provide a product to fill the gap for retired first responders under 65 years of age. In 2015, Ms. Reed formed a Texas entity[1] that began providing health insurance benefits to first responders in Texas and also sold life insurance and annuity products.

12. Around 2017, Ms. Reed was introduced to Defendant through an industry contact since Ms. Reed is well known for hiring agents who are current or retired first responders. At that time, Defendant was working with the Sheriff's Department in California and was interested in pursuing a career in the insurance industry. Defendant began working as a 1099 contractor selling life insurance and annuity contracts.

### THIN BLUE LINE BENEFITS ASSOCIATION HOLDINGS, LLC IS CREATED

13. In 2020, Ms. Reed was approached by a union to help fill the gap for their pre-65 healthcare first responders who were not yet eligible for Medicare. Ms. Reed determined the best pathway to solving that problem would be by creating an association that was free to its members and offered additional membership benefits, including lower cost group health insurance plans. However, to make it work, she would need to expand the benefit offerings beyond Texas and create an association that could be recognized nationally and be able to provide group health benefits.

14. Ms. Reed shared her idea of expanding the retired, pre-65 healthcare option with Defendant and others. Ms. Reed inquired if the Defendant would be interested in handling the business development portion of the national association. Defendant agreed. Eventually it was

---

[1] Thin Blue Line Benefits, Inc.

discussed that Thin Blue Line Benefits Association Holdings, LLC ("TBL") would be formed in Texas, Ms. Reed would be the sole manager, Ms. Reed and Defendant would also be LLC members (along with other initial members), the association would use outside contracts for other services required, Defendant would hold a VP title and focus on business development with unions, and that LLC members would be provided a membership interest in the LLC without salary or buyout options since it was a startup with little funding.[2]

15. TBL was formed on May 26, 2020, with Ms. Reed, Defendant, and a few others as the initial members.[3] TBL is an association that first responders can join to get access to insurance benefits and other member advantages. TBL has been recognized by the State of Texas to offer these group benefits to its members. Defendant would travel to Texas 2-3 times every year to deal with business matters and he had dedicated office space in the TBL headquarters located in Lakeway, Travis County, Texas, which he used during those trips.

16. In 2021, TBL launched and began offering benefits on a national level. Mr. Anderson became an LLC member in 2021. Mr. Anderson, a custom plan designer, created the Signature Plan that offered benefits to retired first responders under the age of 65 and/or with pre-existing conditions and is compliant with the Affordable Care Act ("ACA") and the minimum essential coverage ("MEC") requirements mandated by the ACA.

TBL HEALTH BENEFITS STRUCTURE

17. The health benefits that TBL offers its members are self-funded health benefits, which includes the MEC portion of the Signature Plan, whereby TBL is the Plan Sponsor, and plans are administered through a Third-Party Administrator. As the Plan Sponsor, TBL contracts

---

[2] *See* TBL Written Consent in Lieu of Organizational Meeting, a true and correct copy attached hereto as **Exhibit A**.
[3] See Certificate of Formation for Thin Blue Line Benefits Association Holdings, LLC, attached hereto as **Exhibit B**, Written Consent in Lieu of Organizational Meeting, a true and correct copy attached hereto as **Exhibit A,** and the Company Agreement, attached hereto as **Exhibit C**.

directly for these health benefits, which are renewed on an annual basis. Ms. Reed is the sole authority to sign plan documents, and TBL has sole liability for ensuring compliance with the various health plan documents. The Signature Plan at issue in this case is subject to the Affordable Care Act ("ACA") and other regulatory laws. TBL is the existing Plan Sponsor of the Signature Plan.

18. Some of the applicable regulations, which are relevant to this lawsuit, include the following:

- **Guaranteed Renewability.** Per 42 U.S.C.A 18001, §2703 of the Affordable Care Act, health plan sponsors (in this case, TBL) must ensure that all plan participants given the opportunity to renew their health insurance. This opportunity protects individuals by guaranteeing that they cannot be denied coverage based on pre-existing conditions and that they can continue their health insurance without interruption during the open enrollment period, which normally begins on January 1, 2025. Accordingly, participants must be notified prior to such a time.
- **No Rescission**. Per 42 U.S.C.A 18001 §2712, "A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not" be cancelled or rescinded.
- **No Discrimination.** Per 42 U.S.C.A 18001 §2704, "A group health plan and a health insurance issuer offering group or individual health insurance coverage may not impose any preexisting condition exclusion with respect to such plan or coverage."
- **Transfer of Health Plans**. Plan Sponsors must ensure that the transfer of a health plan to another health plan is only done if that plan is qualified (offers the same coverage and benefits) and does not exclude any of the active participants from coverage or eligibility under the new plan.

<u>DEFENDANT'S DESIRE TO WITHDRAW FROM TBL</u>

19. As of January 2024, the sole members of TBL were Anna Reed holding 53% membership interests, Robert Anderson with 10%, and Defendant with 37%. In mid-year 2024, Defendant began to have some health issues and requested to withdraw as an LLC member. Defendant specifically requested that he acquire the Signature Plan so that he may continue to receive the commission and have some flow of income. Reed, Anderson, and TBL agreed to this arrangement, subject to specific terms, which included transitioning the plan to another qualified

association and providing an opportunity to continue growing the plan to maximize his commission payments as a non-LLC member.[4]

## THE REDEMPTION AND WITHDRAWAL AGREEMENT

20. The parties reached and entered into a Redemption and Withdrawal Agreement dated June 21, 2024.[5] The Redemption Agreement was drafted based on the understanding of the parties that nothing would change in the logistics of the plan as far as performing and serving its participants except, upon certain conditions being met, the plan would transfer to an association held by Defendant, and he would retain 100% of the Signature Plan's commissions and eventually become the Plan Sponsor.

21. Due to the annual renewal terms of the Signature Plan Health Plan documents, the Signature Plan could not officially transfer and be "fully owned" by Defendant (as opposed to taking ownership of the duties, obligations, business development, and right to receive full commissions) until January 1, 2025, when the plan was set to renew and plan participants were provided an opportunity to renew and transfer during open enrollment.[6] In order to address these delays, the Redemption Agreement was structured to happen in phases. A general synopsis of how the Redemption Agreement was to unfold is as follows:

- From June 21, 2024 through August 31, 2024 Defendant would continue to receive 37% broker commissions.[7]

---

[4] *See* a true and correct copy of the Redemption and Withdrawal Agreement, p.2 para. 2(a)(1), attached hereto as **Exhibit D** and page 18 of the Independent Contractor Agreement attached as Exhibit A to the Redemption and Withdrawal Agreement.

[5] **Exhibit D**, p. 10, para 10(c) states that "This Agreement and the rights of the parties hereunder shall be governed by and interpreted in accordance with the internal laws of the State of Texas, without reference to the rules regarding conflict or choice of laws."

[6] *See 42 U.S.C.A 18001, §2703 of the Affordable Care Act (health plans sponsors must ensure that all plan participants are given the opportunity to renew their health insurance. This opportunity protects individuals by guaranteeing that they cannot be denied coverage based on pre-existing conditions and that they can continue their health insurance without interruption. during the open enrollment period).*

[7] Redemption and Withdrawal Agreement, p.3, para.2(a)(4), attached hereto as **Exhibit D.**

- From August 1, 2024 to December 31, 2024, Defendant would receive 100% of the Signature Plan commissions.[8]
- As of August 1, 2024, Defendant would be relieved from all LLC membership obligations.[9]
- As of August 1, 2024 Defendant would become an independent contractor.[10]
- As of August 1, 2024, Defendant agreed to assume all liability and management of the Signature Plan since Defendant was receiving 100% of the commissions, but legally TBL was still the Plan Sponsor and responsible for ensuring compliance.[11]
- All vendors would remain in place through December 31, 2024.[12]
- Between August 1, 2024 and December 31, 2024, Defendant was to establish a separate association, recognized by the State of Texas, that could house the plan, with a one-year extension to December 2025 provided in case of any delays.[13]
- Until such time as a separate association was established and recognized, and the plan could transfer, the Signature Plan remained under TBL as the Plan Sponsor.[14]
- Once the separate association was created and recognized, but no sooner than January 1, 2025 due to legal restrictions, then TBL would transfer the plan in full to Defendant's new association as the plan sponsor.[15]
- Defendant was not to market or solicit to the NFOP or IAFF for a period of 36 months.[16]

22.　The shared vision of the Redemption Agreement was that TBL would continue to oversee the Signature Plan and cooperate in transitioning the plan to Defendant once Defendant set up the new, separate association and Texas entity.

23.　However, Defendant never established the separate entity envisioned by the Redemption Agreement. Instead, Defendant intentionally and explicitly abandoned the Signature Plan and decided not to renew it. Defendant instead created a new LLC, First Responder's Group, and a new plan called the Freedom Plan, to market and sell to current Signature Plan members as a "replacement" plan.

---

[8] Redemption and Withdrawal Agreement, p. 3, para. 2(a)(4), attached hereto as **Exhibit D.**
[9] Redemption and Withdrawal Agreement, p. 3, para.2(b), attached hereto as **Exhibit D.**
[10] Redemption and Withdrawal Agreement, p. 2, para. 2(a)(2), attached hereto as **Exhibit D.**
[11] Redemption and Withdrawal Agreement, p. 3, para. 2(a)(1) attached hereto as **Exhibit D.**
[12] Redemption and Withdrawal Agreement, p.2, para. 2(a)(1), attached hereto as **Exhibit D.**
[13] Redemption and Withdrawal Agreement, p. 2, para. 2(a)(1) attached hereto as **Exhibit D.**
[14] Redemption and Withdrawal Agreement, p. 2, para. 2(a)(1), attached hereto as **Exhibit D.**
[15] Redemption and Withdrawal Agreement, p. 2, para. 2(a)(1), attached hereto as **Exhibit D.**
[16] Redemption and Withdrawal Agreement, p. 10, para. 9, attached hereto as **Exhibit D.**

24. Defendant's Freedom Plan, marketed to TBL's members as "replacing" the Signature Plan, was not equivalent to the Signature Plan. For example, the plan did not cover pre-existing conditions, did not offer rollover credits, was not part of a nationally available plan, and was an individual plan rather than a sponsored group plan.

25. Defendant failed to offer full renewal options in time for members to make an informed choice an in violation of the ACA.[17] Defendant also misrepresented that the renewal rates were exorbitantly higher than TBL's. Defendant further misrepresented that the former group plan established by TBL had dissolved, and that the members had to either chose his Freedom plan or resort to the health marketplace. Prior to January 1, 2025, Defendant informed members that their policy would be terminated, in violation of TBL's ethical and legal obligations to offer those members a renewal[18] and in violation of federal law.[19]

26. Defendant marketed the Freedom Plan to NFOP in violation of the non-compete provision in the Redemption Agreement.[20] Defendant knowingly misrepresented that he was doing so with the approval and on behalf of TBL Defendant did not have TBL's approval. This misrepresentation caused confusion to current TBL members, customers, participants, and vendors.

---

[17] *See* 42 U.S.C.A 18001, §2703 of the Affordable Care Act (health plans sponsors must ensure that all plan participants are given the opportunity to renew their health insurance. This opportunity protects individuals by guaranteeing that they cannot be denied coverage based on pre-existing conditions and that they can continue their health insurance without interruption. during the open enrollment period).

[18] See Clay email dated October 11, 2024 email to Signature Plan participants (participant and name and email has been redacted for privacy reasons), attached hereto as **Exhibit E.**

[19] *See* 42 U.S.C.A 18001 §2704, "A group health plan and a health insurance issuer offering group or individual health insurance coverage may not impose any preexisting condition exclusion with respect to such plan or coverage"; 42 U.S.C.A 18001 §2712, "A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not" be cancelled or rescinded.

[20] Redemption and Withdrawal Agreement, p. 10, para. 9, attached hereto as **Exhibit D.**

27. Defendant also misrepresented to members that they should switch plans because of compliance and financial concerns with TBL.

28. Because the transfer contemplated by the Redemption Agreement was never completed, TBA remains liable for complying with regulatory principles pertaining to participants' basic rights and responsibilities, full detail of premiums, cost-sharing, deductibles, co-payments, and more.

### THE INDEPENDENT CONTRACTOR AGREEMENT

29. In tandem with the Redemption Agreement, Defendant was provided with an ICA for a period of 12 months at $14,000.00 a month, to provide Defendant with an opportunity to build participation in the Signature Plan for which he would be receiving 100% of the commissions.[21]

30. The ICA contained the following provisions:

- Maintain ongoing relationships regarding sales and marketing of TBL's health insurance products.[22]
- TBL to pay Defendant $14,000.00 a month by the 15th of the month for performance of the services.[23]
- Defendant to perform the services in a professional and workmanlike manner.
- Defendant to keep TBL's nonpublic, financial and business affairs confidential.[24]

### TERMINATION LETTER

31. On or about November 12 or 13, 2024, TBL discovered that Defendant was not performing sales and marketing services for the benefit of TBL, despite being fully paid his monthly amount. TBL also learned that Defendant had disclosed confidential information and

---

[21] *See* Independent Contractor Agreement, p.18, (attached to Exhibit D).
[22] *See* Independent Contractor Agreement, p.18, (attached to Exhibit D).
[23] *See* Independent Contractor Agreement, p.18, (attached to Exhibit D).
[24] *See* Independent Contractor Agreement, p.15, para.7. (attached to Exhibit D).

made false statements concerning TBL. Accordingly, TBL terminated the ICA on November 15, 2024 demanding that Defendant cease and desist his conduct and retract his statements.[25]

CEASE AND DESIST LETTER AND CONTINUED BAD CONDUCT

32. In response to TBL's termination of the ICA and cease and desist letter, Defendant, through California counsel, sent a cease and desist letter to TBL dated November 26, 2024, demanding that TBL stop communicating with Signature Plan policyholders, to stop interfering with the "product they transferred to Mr. Clay" and demanded continued payment under the ICA.[26] Additionally, on November 25, 2024, Defendant cut off access to the Signature Plan portal, paid himself with plan funds, and switched vendors, in violation of the Redemption Agreement.[27] On December 7, 2024 Plaintiffs, through counsel, responded to the cease and desist letter and demanded that Defendant immediately: (1) cease and desist stating to others that he owns or acquired the Signature Plan from TBL, (2) that the Signature Plan is going away or not being renewed, (3) stating that the members are being transitioned to the "replacement" Freedom Plan, (4) stating to others that the Signature Plan is going to experience outrageous rate increases from Zion Health Share, (5) that Defendant provide Plaintiffs with access to the Signature Plan portal so that they can fulfill their statutory compliance obligations, and (6) that Defendant acknowledge in a sworn, written format that he has no interest by ownership, or otherwise, in the Signature Plan.[28]

## CLAIMS FOR RELIEF

33. Plaintiffs hereby incorporate the factual statements set forth in paragraphs 7 through 25, as if fully set forth herein.

---

[25] *See* a true and correct copy of the termination letter dated November 15, 2024, attached hereto as **Exhibit F**.
[26] *See* a true and correct copy of the cease-and-desist letter dated November 24, 2024, attached hereto as **Exhibit G**.
[27] Redemption and Withdrawal Agreement, p. 2, para.2(a)(1), attached hereto as **Exhibit D.**
[28] *See* a true and correct copy of the response letter dated December 7, 2024, attached hereto as **Exhibit H**.

### Count One - Breach of Contract

34. At all times relevant to this action, Plaintiffs performed, tendered performance, or was excused from performing its obligations under the Redemption Agreement.

35. Defendant's conduct, as described above, breached the Redemption Agreement.

36. As a result of Defendant's breaches, Plaintiffs have sustained damages within this Court's jurisdictional limits.

### Count Two - Business Disparagement

37. As set forth above, Defendant published disparaging words to a third party about TBL's economic interests. Defendant knew the statements were false, acted with reckless disregard for whether the statements were true, acted with ill will, or intended to interfere with plaintiff's economic interests. As a direct and proximate result of Defendant's conduct, Plaintiffs have sustained special damages.

### Count Three – Negligent Misrepresentation

38. As set forth above, Defendant made a representation to Plaintiffs in the course of the defendant's business, supplied false information for the guidance of others, and did not use reasonable care in communicating the information. Plaintiffs justifiably relied on the representation. As a direct and proximate result of Defendant's conduct, Plaintiffs have sustained damages.

### Count Four - Tortious Interference with Existing Contracts

39. Defendant's actions, as set forth above, willfully and intentionally interfered with the contracts between TBL and NFOP and other customers and members, which are still being discovered daily. As a direct and proximate result of Defendant's conduct, Plaintiffs have sustained damages within this Court's jurisdictional limits.

Count Five - Declaratory Judgment

40.     This matter involves an actual controversy over the Plaintiff's rights and status under the contracts. Plaintiffs seek appropriate declaratory relief confirming that (1) Defendant's conduct is prohibited, (2) Plaintiff TBL is the rightful owner of the Signature Plan with all duties and obligations associated therewith, including the right to retain commissions and contact participants, (3) the ICA has been rightfully terminated, (4) no further obligations are owed to Defendant, and (5) Defendant has no authority to continue to perform, or hold himself out as, acting on behalf of TBL.

Injunctive Relief

41.     Plaintiffs ask the Court to set their application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against defendant. As describe above in this Complaint, Plaintiffs have suffered irreparable injury, monetary damages are inadequate to compensate for that injury, considering the balance of hardships between the Plaintiffs and Defendant, an equitable remedy is warranted, and the public interest would not be disserved by a permanent injunction enjoining Defendant from: (1) stating to others that he owns or acquired the Signature Plan from TBL, (2) that the Signature Plan is going away or not being renewed, (3) stating that the Signature Plan participants are being transitioned to a replacement Freedom Plan, (4) stating to others that the Signature Plan is going to experience outrageous rate increases from Zion Health Share, and (5) stating that he or the Freedom Plan are in any way associated with Plaintiff TBL.  Plaintiffs reserve their right to apply for a Temporary Restraining Order and/or Preliminary Injunction in an instrument separate from this Complaint, should such be deemed necessary based on Defendant's conduct in interfering with TBL's performance of its statutory obligations and putting TBL and the Signature Plan participants at risk.

## **CONDITIONS PRECEDENT**

42. Plaintiffs have performed all conditions precedent to Defendant's obligations to perform.

## **ATTORNEY'S FEES**

43. Plaintiffs have employed the undersigned counsel to protect and enforce its rights under the contracts and prosecute its other claims. Pursuant to Tex. Civ Prac. and Rem. Code §37.009 and §38.001, Plaintiff seeks recovery of its reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that Defendant be cited to appear and answer, and that on final hearing, Plaintiffs have judgment against Defendant for:

a. The declaratory relief sought as set forth in the complaint;

b. Actual, special Damages within the jurisdictional limits of this Court;

c. Injunctive relief as set forth in this Complaint

d. Attorney's fees incurred by Plaintiffs in this suit;

e. Pre- and post-judgment interest as allowed by law;

f  Court Costs; and

g. Such other and further relief to which Plaintiffs may be justly entitled in law or in equity.

Respectfully submitted,

THE DEITCH LAW OFFICES
800 Rio Grande
Austin, Texas 78701
512/ 474-1554
512/ 474-1579 (telecopy)
mike@deitchlaw.com (email)
brian@deitchlaw.com (email)
mary@deitchlaw.com (email)


By */s/ MARY L. DALE*
   MARY L. DALE
   STATE BAR NO. 24034404
   MICHAEL DEITCH
   STATE BAR NO. 05644550
   BRIAN DEITCH
   STATE BAR NO. 24067572

Attorneys for Plaintiffs,

Thin Blue Line Benefits Association Holdings, LLC, Anna Reed, and Robert Anderson

## UNSWORN DECLARATION

(Pursuant to 28 U.S.C.A. §1746)

"My name is Anna Reed, my date of birth is December 23, 1974, and my business address is 1415 Ranch Road 670 S., Suite 201, Lakeway, Travis County, Texas, U.S.A. I am over the age of eighteen years, of sound mind, literate in the English language and otherwise fully capable, competent, and authorized to make this declaration. I am the sole manager of Thin Blue Line Benefits Association Holdings, LLC and also a party to this lawsuit. I have read the foregoing Plaintiffs' Original Complaint and Request for Declaratory Judgment, and Request for Permanent Injunction. I have personal knowledge of the factual matters alleged in the Application in Paragraphs 2-3, 10, and 11-32. I declare under penalty of perjury that the matters indicated in those paragraphs are within my personal knowledge and are true and correct."

EXECUTED in Travis County, State of Texas, on December 9, 2024.

_____
ANNA REED