**THE DEITCH LAW OFFICES**

A PROFESSIONAL CORPORATION

800 RIO GRANDE

AUSTIN, TEXAS 78701

MICHAEL DEITCH
  mike@deitchlaw.com
BRIAN DEITCH
  brian@deitchlaw.com
MARY LOPEZ DALE
  mary@deitchlaw.com

TELEPHONE: 512/474-1554
TELECOPIER: 512/474-1579
WEB SITE: www.deitchlaw.com

December 7, 2024

OUR FILE NUMBER
2411-268

Ms. Michelle A. Philo
PHILO Law Firm, PC
P.O. Box 16721
Irvine, CA 76541                                Via Email to: michelle@philolaw.com

RE:   Redemption and Withdrawal Agreement dated June 21, 2024 between Thin Blue Line Benefits Association Holdings, LLC, a Texas limited liability company ("Company"), Matthew Clay ("Withdrawing Member"), and Anna Reed and Robert Anderson (collectively Remaining Members").

Dear Ms. Michelle A. Philo,

   As you are aware, I've been performing my due diligence concerning the statements, laws, allegations, and facts surrounding the cease-and-desist letter you sent this firm dated Tuesday, November 26, 2024 at 6:36pm CST. As you're also aware, our firm was closed Wednesday through Friday (November 26-28) for the Thanksgiving holiday. Accordingly, I did not review your letter until Monday of this week, December 2nd. I have done my best to gather the information and perform a due diligence concerning very complex and highly regulated matters within the very short timeframe you provided.

   In that respect, the analysis is that your client's decision to not comply with the transition terms set forth in the Redemption and Withdrawal Agreement ("RWA") led to the Signature Plan never being fully transitioned to your client's ownership and his related association becoming the plan sponsor, as was anticipated by the RWA provisions. Specifically, the RWA stated:

> In an effort to assist Withdrawing Member with the Signature Plan to be able to be marketed and sold, ***the Company shall allow Signature Plan to remain under the umbrella of the Company for a period of time not to exceed 12 months from the date of full ownership, <u>January 1, 2025</u>, as it is already filed and approved as an association in the state of Texas. The provisions of this paragraph shall remain in effect until such time that Withdrawing Member successfully establishes a separate association***, no later than December 31, 2025, whichever comes first. ***Additionally, the company will assist Withdrawing Member in creating an entity in which Signature can be housed in order to be filed and recognized by the State of Texas, prior to renewal for the January 2025 plan year***. Withdrawing Member assumes full responsibility for the actual filing and any associated fees. (***Emphasis added***).

   As stated in the RWA, transition and ownership of the plan on January 1, 2025 to Mr. Clay was conditioned on (1) successfully establishing a separate association, (2) creating an entity in which the Signature Plan could be housed and recognized by the State of Texas, and (3) doing so prior to

**THE DEITCH LAW OFFICES**
A PROFESSIONAL CORPORATION

Ms. Michelle A. Philo
PHILO Law Firm, PC
December 7, 2024
Page 2

renewal for the January 2025 plan year. As you are also aware, the renewal and open enrollment period begins annually on November 1 and ends January 15.

It appears your client established an association in Delaware but did not have it recognized, nor did he create a Texas entity and have it recognized to house the Signature Plan within the required time period. "Recognized", as you may be aware, requires having a comparable legal entity that is approved by the underwriters and the State that can wholly accept the Signature Plan and its participants. Your client was fully aware of the full ownership requirements and when that would occur, as he stated in his September 17, 2024 email below (highlights and emphasis have been added).

From: Matt Clay <claylabor@gmail.com>
Subject: Conversation on Sept 17th
Date: 17 September 2024 at 16:15:24 GMT-7
To: "anna thinbluelinebenefits.com" <anna@thinbluelinebenefits.com>, Robert Anderson <leopold2141@gmail.com>

Hello.

Just to re-cap and memorialize today's conversation and the plan going forward.

1. Matt already created an association. Company filed in Delaware. It was Filed in the exact manner TBL filed prior.

2. **Underwriters to approve Matt's new association over the next couple of weeks. This accommodates the transfer to Matt's association**.

3. At the point right **thereafter that the new association is recognized, Matt will take ownership of the plan**.

4. Matt will offer members new plan offering with plenty of notice. People can choose to enroll in said new plan or shop the marketplace on their own if they wish.

5. Of course TBL will pay the claims up to July 31. Matt will pay claims incurred after that. These will be paid in full prior to transfer.

This does not dissolve the standing agreement. It can only amend.

Best regards,

Matt

In fact, not only did your client nor perform within the required time period, but he also stated on several occasions that he had no intention in doing so, as reflected by information shared with my clients based on conversations they had with Matt Clay:

November 12, 2024

To Whom It May Concern:

On July 19, 2024 around 3:16pm EST, I was contacted on the phone by Matt Clay. He
expressed to me his intentions to leave Thin Blue Line and take "his" clients with him.

**THE DEITCH LAW OFFICES**
A PROFESSIONAL CORPORATION

Ms. Michelle A. Philo
PHILO Law Firm, PC
December 7, 2024
Page 3

He would therefore be pulling them off the Dental and Vision plans as well as the medical plan because he stated that the medical plan has issues, and he was concerned it would become insolvent.

He stated that he had talked to Anna Reed and had worked this out with her.
I asked him about what his plan was for where he would be moving these members of Thin Blue Line to for coverage since they were association members. According to him, at this time he had no specific plan for them.

…..

Thank you.
Peter David

_____

From: Matt Clay <matt@firstresponderhealthgroup.com>
Sent: Tuesday, November 12, 2024 12:08 PM
To: Gary Goldstein <ggoldstein@insynctive.com>; Michael Harb <mharb@alignhealthpartners.com>; Troy Neimann <troy@alignhealthpartners.com>
Subject: Re: Let's discuss about MetLife Dental and Vision plans Open Enrollment happening now

Hi Gary. I hope you're doing great.

We did not go forward with MetLife for our people in the Signature portal. Met will not contract with non employer groups. Our Signature people have been advised that the dental and vision plan is going away 12/31/24. We are suggesting what they can do as a means of assistance.

I hope this helps. We are also not facilitating any "internal" moves to any other source. We are simply assisting them with options that have in the marketplace if asked.

Kind regards,

Matt

       Accordingly, your client never met the mandatory conditions to acquire full ownership of the Signature Plan. The Signature Plan is still alive and active and under the ownership and control of Thin Blue Line Association Group Benefits, LLC, which is the Plan Sponsor.

       Rather, your client decided to create a new entire plan, the Freedom Plan, that was <u>not a group plan</u> and <u>excluded those with pre-existing conditions</u>. As you know, therefore, the Freedom Plan is not a qualified comparable plan that would allow the Signature Plan members to simply transition over.[1] Additionally, the Signature Plan cannot simply be "shut down"[2] and all participants

---

[1] Per 42 U.S.C.A 18001 §2704, "A group health plan and a health insurance issuer offering group or individual health insurance coverage may not impose any preexisting condition exclusion with respect to such plan or coverage".

[2] Per 42 U.S.C.A 18001 §2712, "A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not" be cancelled or rescinded.

THE DEITCH LAW OFFICES
A PROFESSIONAL CORPORATION

Ms. Michelle A. Philo
PHILO Law Firm, PC
December 7, 2024
Page 4

of the Signature Plan are *entitled and must be offered by federal law* the option to renew[3] the Signature Plan. Furthermore, current Signature Plan participants with existing unpaid claims cannot leave the plan until the claims are paid. If they do so, or if the plan is terminated prior to a claim being filed and paid, Zion will not pay the claim.

Your client's conduct in not performing per the terms of the RWA, communicating that the Signature Plan was not renewing and would be going away, and excluding those with preexisting conditions to move to a new plan, have created serious compliance issues that Thin Blue Line Benefits Association Holdings, LLC ("TBL") and its Remaining Members are now required and attempting to clean up, since TBL remains the Plan Sponsor of the Signature Plan.

The bottom line is that your client did not meet the conditions of the RWA for transferring the Signature Plan and obtaining full ownership. Accordingly, TBL must ensure that those current members and participants of the Signature Plan are offered the chance to renew during the current open enrollment period.

To be clear, my clients have no issue with Mr. Clay having a completely separate plan that he is marketing or even that he is offering that plan option to Signature Plan members. The problem is the false statements he is making with respect to the Signature Plan placing it out of compliance, and then interfering when TBL tries to cure the noncompliance as required by the current Plan Sponsor; which your client is not.

Is hereby demanded that your client **immediately**: (1) cease and desist stating to others that he owns or acquired the Signature Plan from TBL, (2) that the Signature Plan is going away or not being renewed, (3) stating that the members are being transitioned to the "replacement" Freedom Plan, (4) stating to others that the Signature Plan is going to experience outrageous rate increases from Zion Health Share, (5) that your client provide my clients with access to the Signature Plan portal so that they can fulfill their statutory compliance obligations, and (6) that your client acknowledge in a sworn, written format that he has no interest by ownership, or otherwise, in the Signature Plan.

Respectfully,

Mary L. Dale

---

[3] *See* 42 U.S.C.A 18001, §2703 of the Affordable Care Act (health plans sponsors must ensure that all plan participants are given the opportunity to renew their health insurance. This opportunity protects individuals by guaranteeing that they cannot be denied coverage based on pre-existing conditions and that they can continue their health insurance without interruption. during the open enrollment period).

**THE DEITCH LAW OFFICES**
A PROFESSIONAL CORPORATION

Ms. Michelle A. Philo
PHILO Law Firm, PC
December 7, 2024
Page 5

    cc:    Client